UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PK MUSIC PERFORMANCE, INC., | Civil Action No.: 16 Civ. 1215 (VSB) |
| Plaintiff, | ECF Case |
| - against - | |
| JUSTIN TIMBERLAKE, WILL ADAMS p/k/a "WILL.I.AM" and d/b/a "WILL.I.AM MUSIC PUBLISHING", ZOMBA RECORDING LLC ARISTA US HOLDINGS, INC., SONY MUSIC ENTERTAINMENT, TENNMAN TUNES, LLC, UNIVERSAL MUSIC – Z TUNES LLC, I.AM.COMPOSING, LLC, BMG RIGHTS MANAGEMENT (US) LLC d/b/a "BMG SAPPHIRE SONGS", WILL I AM MUSIC, INC., TENNMAN PRODUCTIONS LLC, | |
| Defendants. | |

**MEMORANDUM OF LAW OF DEFENDANTS WILLIAM ADAMS, I.AM.COMPOSING, LLC, WILL.I.AM MUSIC, INC. AND BMG RIGHTS MANAGEMENT (US) LLC IN SUPPORT OF SECOND MOTION TO DISMISS**

MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, NY 10036
(212) 790-4500

*Attorneys for Defendants*
*William Adams p/k/a will.i.am d/b/a will.i.am Music*
*Publishing, i.am.composing, llc, will.i.am music, inc. and*
*BMG Rights Management (US) LLC d/b/a BMG Sapphire Songs*

## TABLE OF CONTENTS

                                                                                                            **Page**

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................................... 2

LEGAL STANDARD ..................................................................................................................... 6

ARGUMENT .................................................................................................................................. 8

I.     THE COPYRIGHT ACT'S THREE-YEAR STATUTE OF LIMITATIONS BARS PLAINTIFF'S CLAIM IN ITS ENTIRETY BECAUSE THE CLAIM MUST BE REGARDED AS A COPYRIGHT OWNERSHIP CLAIM THAT ACCRUED NO LATER THAN 2007 ............................................................................... 8

II.    EVEN IF PLAINTIFF'S CLAIM WERE VIEWED AS A COPYRIGHT INFRINGEMENT CLAIM (AND IT SHOULD NOT BE), IT NEVERTHELESS ACCRUED BY 2007, PREVENTING PLAINTIFF FROM OBTAINING RELIEF MORE THAN THREE YEARS PRIOR TO SUIT .......................................... 11

III.   ASSUMING ARGUENDO THAT PLAINTIFF'S CLAIM DID NOT ACCRUE UNTIL 2015, PLAINTIFF STILL WOULD NOT BE ENTITLED TO ANY RELIEF MORE THAN THREE YEARS PRIOR TO SUIT .......................................... 13

CONCLUSION ............................................................................................................................. 14

## TABLE OF AUTHORITIES

**Page**

### CASES

*Aalmuhammed v. Lee*,
  202 F.3d 1227 (9th Cir. 2000) ................................................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................................6, 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................................6, 7

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002).......................................................................................................7

*Effie Film, LLC v. Pomerance*,
  909 F. Supp. 2d 273 (S.D.N.Y. 2012).......................................................................................8

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991)...................................................................................................................6

*Jones v. Bock*,
  549 U.S. 199 (2007)...................................................................................................................7

*Kregos v. Associated Press*,
  3 F.3d 656 (2d Cir. 1993).........................................................................................................13

*Kwan v. Schlein*,
  634 F.3d 224 (2d Cir. 2011)............................................................................................. passim

*Margo v. Weiss*,
  96 Civ. 3842, 1998 WL 2558 (S.D.N.Y. Jan. 5, 1998)..............................................9, 10, 11

*Merchant v. Levy*,
  92 F.3d 51, 56 (2d Cir. 1996), *aff'd*, 213 F.3d 55 (2d Cir. 2000) .......................................9, 13

*Minder Music Ltd. v. Mellow Smoke Music Co.*,
  No. 98 Civ. 4496, 1999 WL 820575 (S.D.N.Y. Oct. 14, 1999) ..........................................8, 9

*Mount v. Book-of-the-Month Club, Inc.*,
  555 F.2d 1108 (2d Cir. 1977)...................................................................................................13

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
  134 S. Ct. 1962 (2014).............................................................................................................13

*Psihoyos v. John Wiley & Sons, Inc.*,
  748 F.3d 120 (2d Cir. 2014).....................................................................................................12

*Rico Records Distribs., Inc. v. Ithier*,
  04 Civ. 9782 (JSR), 2005 WL 2174006 (S.D.N.Y. Sept. 8, 2005)..........................................10

*Robbins Music Corp. v. Weinstock*,
  107 F. Supp. 102 (S.D.N.Y. 1952) ...........................................................................................8

## TABLE OF AUTHORITIES

Page

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000) .................................................................................................... 7

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
  137 S. Ct. 954 (2017) ................................................................................................... 12, 13

*Simmons v. Stanberry*,
  810 F.3d 114 (2d Cir. 2016) ............................................................................................ 10, 11

*Staehr v. Hartford Fin. Servs. Group, Inc.*,
  547 F.3d 406 (2d Cir. 2008) .............................................................................................. 7

*Stone v. Williams*,
  970 F.2d 1043 (2d Cir. 1992) ................................................................................... 9, 10, 13

*Straughter v. Raymond*,
  No. 08 Civ. 2170, 2011 WL 3651350 (C.D. Cal. Aug. 19, 2011) ......................................... 8

*U.S. Phillips Corp. v. ATI Techs., Inc.*,
  No. 05 Civ. 8176, 2008 WL 2073928 (S.D.N.Y. May 8, 2008) ................................... 9, 10, 12

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
  127 F. Supp. 3d 156 (S.D.N.Y. 2015) .............................................................................. 7, 8

*William A. Graham Co. v. Haughey*,
  568 F.3d 425 (3d Cir. 2009) ............................................................................................ 12

*Williams v. Midwest Airlines, Inc.*,
  321 F. Supp. 2d 993 (E.D. Wisc. 2004) ........................................................................... 8

*Wilson v. Dynatone Publ'g Co.*,
  No. 16 Civ. 104, 2017 WL 1330336 (S.D.N.Y. Apr. 10, 2017) .................................. 9, 10, 11

## RULES

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 1, 6, 7, 14

Fed. R. Civ. P. 19 ............................................................................................................. 6

Fed. R. Evid. 201 .......................................................................................................... 7, 8

Fed. R. Evid. 201(b)(2) ................................................................................................... 7

Fed. R. Evid. 201(d) ....................................................................................................... 7

Pursuant to the Court's Order dated June 13, 2017 (Dkt. 87 at 6-7), Defendants William Adams, i.am.composing, llc, will.i.am music, inc. and BMG Rights Management (US) LLC, on behalf of themselves and the other named defendants (all of the foregoing, collectively, "Defendants"), respectfully submit this memorandum of law in support of their second motion to dismiss Plaintiff PK Music Performance, Inc.'s ("Plaintiff") copyright claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff's lawsuit is an exercise in wishful thinking.  Plaintiff claims to own the copyright in the musical composition *A New Day (Is Here At Last)* ("*Day*"), and that Defendants infringed its rights in the work by sampling it in Justin Timberlake's 2006 song *Damn Girl* without the permission of its predecessor, Janis McQuinton.  But Plaintiff glosses over a series of unequivocal public repudiations of McQuinton's ownership rights in the *Day* copyright between 2005 and 2007 for which McQuinton never sought legal redress.  Plaintiff likewise ignores an overwhelming number of other matters of public record demonstrating that McQuinton should have known about Defendants' supposed infringement no later than 2007.  Plaintiff seems to believe that if it simply alleges that McQuinton did not realize until 2015 that *Damn Girl* samples *Day*, then it can avoid the fact that its purported claim accrued by 2007.  However, because McQuinton had every reason to know of the sample and that her ownership rights in the *Day* copyright were in jeopardy as of 2007, Plaintiff is mistaken.  The statute of limitations bars Plaintiff's claim in its entirety, and, in any event, for any time period prior to February 17, 2013.

*First*, the dispute over the ownership of the *Day* copyright confirms that the gravamen of Plaintiff's claim is copyright ownership.  Because McQuinton should have known of the various repudiations of her ownership of the *Day* copyright no later than 2007, the three-year statute of

limitations on her copyright ownership claim began to run at that time. McQuinton's failure to file suit by 2010 bars Plaintiff from doing so now.

*Second*, even if Plaintiff's claim were viewed as a copyright infringement claim (and it should not be), Plaintiff still would not be able to pursue the claim or recover damages for any time period before 2013. McQuinton, who recorded the assignment under which she claimed rights in *Day* with the Copyright Office approximately three years **before** *Damn Girl*'s release, had multiple reasons to know of Defendant's purported infringement and her resulting injury by 2007, including, among other things, as a result of the credits and copyright registrations for *Damn Girl* that **expressly state** that the song samples *Day*, and the far-reaching success of both the album on which *Damn Girl* appears and the tour in support of the album. Thus, any purported copyright infringement claim that McQuinton may have had (and she had none) accrued no later than 2007. Plaintiff cannot plausibly argue otherwise. Accordingly, Plaintiff's claim fails for any time period more than three years prior to suit.

*Third*, even if Plaintiff's claim first accrued in 2015 (and it did not), Plaintiff still would not be entitled to pursue any claim or recover any damages prior to 2013. As discussed at length in Defendants' prior motion to dismiss (Dkt. 61), binding Supreme Court and Second Circuit precedent impose a strict three-year look back for copyright infringement claims, irrespective of whether the discovery rule or injury rule applies. Such precedent is fatal to Plaintiff's effort to pursue its claim and to recover damages more than three years before suit.

### **FACTUAL BACKGROUND**

Plaintiff alleges that Perry Kibble composed and registered *Day* with the U.S. Copyright Office in 1969. (Cplt. ¶¶ 18, 20) That same year, J.C. Davis released a sound recording of *Day*. (*Id.* ¶ 21) Kibble died in 1999, and left his interest in *Day* to his sister, McQuinton, who

recorded this transfer of rights with the U.S. Copyright Office in 2003. (*Id.* ¶¶ 23-24) In December 2015, approximately two months before the commencement of this lawsuit, McQuinton assigned her rights in *Day* to Plaintiff, a corporation of which she is the principal. (*Id.* ¶ 25) McQuinton's 2003 recordation with the Copyright Office of the purported rights in *Day* that she had received from Kibble demonstrates that McQuinton knew of her rights in *Day* before *Damn Girl*'s release, and understood the significance of recording documents with the Copyright Office.[1]

In 2006, Timberlake released *Damn Girl* on the album *FutureSex/LoveSounds* (the "Album"). (*Id.* ¶ 28) The following year Timberlake released a DVD of a concert at Madison Square Garden entitled *FutureSex/LoveShow: Live from Madison Square Garden* (the "DVD") featuring a performance of *Damn Girl* and other songs from the Album. (*Id.* ¶ 34) Plaintiff alleges that "[a] substantial amount of the music in *Damn Girl* is copied from [*Day*]", and that the music in the two songs is "strikingly similar". (*Id.* ¶¶ 28, 31) Plaintiff also avers that Timberlake performed *Damn Girl* "at all concerts" he performed on tour, that Defendants "reproduced, distributed and/or publicly performed" *Damn Girl* "throughout the world", and that they continue to infringe *Day*. (*Id.* ¶¶ 33-36) Plaintiff further maintains that *Damn Girl* infringes *Day* because it samples *Day* without McQuinton's or Plaintiff's authorization. (*Id.* ¶ 35) According to Plaintiff, this infringement is "willful" because "[n]o one ever contacted . . . McQuinton or plaintiff for permission to copy or otherwise use [Day] in Damn Girl." (*Id.* ¶ 40) Plaintiff ignores the fact that, before *Damn Girl*'s release, Defendants sought and obtained

---

[1] In or around 2007, McQuinton also entered into and recorded with the Copyright Office an assignment of rights in and to Kibble's musical compositions, excluding *Day*, that she made to Spirit One Music. (*See* accompanying Declaration of Robert A. Jacobs executed on July 20, 2017 ("Jacobs Decl.") ¶ 2 & Exh. 1) The 2007 assignment and recordation, which took place ***after*** Defendants registered their claims to the copyright in *Damn Girl* with the U.S. Copyright Office, further underscore McQuinton's sophistication and familiarity with the Copyright Office's recordation practices.

mechanical and sample use licenses for *Day*'s use from J.C. Davis, who admittedly had originally recorded and released *Day* in 1969 (*see id.* ¶ 21), and from Josh Davis, who had released a remix of the 1969 recording with J.C. Davis's permission on a 2005 album identifying J.C. Davis as the composition's sole copyright owner (the "*Day Remix*").

The public record overwhelmingly demonstrates that McQuinton had multiple reasons to know by 2007 not only the basis of Plaintiff's purported infringement claim (*i.e.*, that *Damn Girl* contains a supposedly unauthorized sample of *Day*), but also that J.C. Davis had repudiated her purported ownership rights in *Day*. As an initial matter, the credits for the Album clearly and unambiguously state that *Damn Girl* "[c]ontains a sample from 'A New Day (Is Here At Last),' written by J.C. Davis, as performed by J.C. Davis, published by J.C. Davis and Yolo Boy (ASCAP), used courtesy of J.C. Davis under license to Cali-Tex Records". (Jacobs Decl. ¶ 3, Exh. 2) Consistent with these credits, the DVD also credits J.C. Davis, but not Kibble, as a songwriter. (*Id.* ¶ 4, Exh. 3) The 2005 release of the *Day Remix* likewise credits J.C. Davis as the exclusive owner of the copyright in *Day*. (Jacobs Decl. ¶ 5, Exh. 4) In addition, the federal copyright registration obtained for the *Damn Girl* musical composition on September 24, 2006 – PA0001165054 – states that the work "Samples A New Day Is Here At Last". (*Id.* ¶ 6, Exh. 5) A second federal copyright registration for the *Damn Girl* composition obtained on December 18, 2006 – PA0001368774 – reveals that J.C. Davis and his publisher, Yolo Boy, acquired a copyright interest in the composition.[2] (*Id.* ¶ 7, Exh. 6) Each of these public statements is an unequivocal repudiation of McQuinton's supposed ownership rights in *Day*.[3]

Separate and apart from the multiple public repudiations of McQuinton's purported

---

[2] The registration also states that the words and music for *Damn Girl*, which samples *Day*, were authored by Will Adams, Justin Timberlake and Josh Davis. (*Id.*)

[3] The credits for the Day Remix, the Album, and the DVD do not mention Kibble, McQuinton or Plaintiff; neither do the *Damn Girl* copyright registrations. (*Id.* Exhs. 2-6)

4

rights, the Album's significant and far-reaching success confirm that she had every reason to know of *Day*'s use in *Damn Girl* by 2007. On January 10, 2008, the Recording Industry Association of America (the "RIAA"), the recording industry's trade association, certified the Album as four times platinum, confirming that it had sold more than four million certified units as of that time. (*Id.* ¶ 8, Exh. 7) In 2006, the Album, and songs featured on it, garnered four Grammy nominations at the 49th Annual Grammy Awards, including for Album of the Year and Best Vocal Album, and won two. (*Id.* ¶ 9, Exh. 8) In 2007, songs featured on the Album received three more Grammy nominations at the 50th Annual Grammy Awards, winning two. (*Id.*) The Album also rose to number 19 on Billboard Magazine's Top 200 Albums for the 2006 Year-End Charts. (*Id.* ¶ 10 Exh. 9) Finally, the Album led to Timberlake winning four awards at the 2007 MTV Video Music Awards, including one for Best Male Artist of the Year. (*Id.* ¶ 11, Exh. 10)

Timberlake's 2007 tour in support of the Album brought public awareness of *Damn Girl*'s use of *Day* to even greater heights. According to Plaintiff, Timberlake performed *Damn Girl* "at all concerts he performed" on the Tour. (Cplt. ¶ 33) The Tour was among the highest grossing tours of 2007, generating nearly $127 million in revenue, and attracting more than 1.6 million attendees. (Jacobs Decl. ¶ 12, Exh. 11)

The success and visibility of the Tour extended well past the box office. On Labor Day 2007, HBO aired as a special Timberlake's concert during the Tour at Madison Square Garden, which concert also is the subject of the DVD. (*Id.* ¶¶ 4, 13, Exhs. 3, 12) The HBO special garnered two Emmy nominations and one Emmy Award in 2008. (*Id.* ¶ 14, Exh. 13) On March 5, 2008, the RIAA certified the DVD as five times platinum, confirming that it had sold more than 500,000 units as of that date. (*Id.* ¶ 8, Exh. 7) Against this background, and in light of

Plaintiff's assertion that *Day* and *Damn Girl* supposedly are "strikingly similar", McQuinton inarguably should have known of J.C. Davis's repudiations of her ownership rights in *Day* and *Damn Girl*'s use of *Day* no later than 2007.  Indeed, a simple query for *Day* on the U.S. Copyright Office's website yields not only Kibble's 1969 copyright registration and McQuinton's 2003 assignment, but also the September 24, 2006 registration of *Damn Girl*, which unequivocally states that *Damn Girl* samples *Day*.  (*Id.* ¶ 15, Exh. 14)

Plaintiff tries to sidestep this case-ending record by alleging that McQuinton "first discovered that the music in Damn Girl was copied from [*Day*] in August, 2015."  (Cplt. ¶ 37)  On this basis alone, Plaintiff claims that it "is entitled to damages dating back to [D]efendants' initial infringement in September, 2006."  (*Id.* ¶ 38)  But based on the foregoing, McQuinton *should have known* about the repudiation of her ownership in *Day* and Defendants' alleged infringement no later than 2007.  McQuinton's failure to file suit to challenge the public repudiations of her supposed ownership of the *Day* copyright by 2010 establishes that Plaintiff's copyright claim is untimely as a matter of law.  Even if it were not untimely (and it is), Plaintiff may not recover damages for any time period prior to 2013.[4]

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of a pleading to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The allegations in the complaint must be "enough to raise a right of relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a Rule 12(b)(6) motion, the complaint must

---

[4] To the extent that Plaintiff's copyright infringement claim were to survive this motion (and it should not), J.C. Davis would be a required party to this lawsuit.  As discussed already, J.C. Davis claims ownership of the *Day* copyright, and has repudiated McQuinton's and Plaintiff's ownership claim.  Because Plaintiff must demonstrate that it, not J.C. Davis, owns the copyright as a mandatory element of its copyright infringement claim, *see Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991), any adjudication of the claim on the merits will necessarily require a determination of and potentially affect J.C. Davis's interests in the copyright.  A third party, such as J.C. Davis here, is a required party where "disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest".  Fed. R. Civ. P. 19.

establish that the requested relief is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The plausibility standard is only satisfied where "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a court ordinarily must accept a plaintiff's allegations as true, it need not accept as true allegations that merely "offer[] 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). If plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Also, if a complaint indicates that the claims at issue are untimely, the court may dismiss them pursuant to Rule 12(b)(6). *See Jones v. Bock*, 549 U.S. 199, 215 (2007); *Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425-26 (2d Cir. 2008) ("[a]ppellee's motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6) was a proper means to plead that the claim should be dismissed as untimely") (citations omitted).

In deciding a motion to dismiss, a court may consider any document referenced in the complaint – even if not specifically attached to the complaint or incorporated by reference – so long as the document is integral to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). A document is integral to the complaint if the complaint "relies heavily upon its terms and effect." *Id.* (internal citations and quotations omitted). In this context, "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit" are considered part of the complaint. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

Further, "[u]nder Federal Rule of Evidence 201, a court may take judicial notice, at 'any stage of the proceeding,' of any fact 'that is not subject to reasonable dispute because' it 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166

(S.D.N.Y. 2015) (quoting Fed. R. Evid. 201(b)(2), (d)). "When considering a Rule 12(b)(6) . . . motion, the Court may take judicial notice of certain matters of public record without converting the motion into one for summary judgment." *Id.* (citations omitted). "Pursuant to Rule 201, courts have considered newspaper articles, . . . documents filed with governmental entities [including with the U.S. Copyright Office] and available on their official websites, and information publicly announced on certain non-governmental websites, such as a party's official website." *Id.* (citations omitted). Further, the fact that "a [song] has been and is a well-known and popular piece" is judicially noticeable, *Robbins Music Corp. v. Weinstock*, 107 F. Supp. 102, 104 (S.D.N.Y. 1952), as are Billboard music charts, *see Effie Film, LLC v. Pomerance*, 909 F. Supp. 2d 273, 300 (S.D.N.Y. 2012); *Straughter v. Raymond*, No. 08 Civ. 2170, 2011 WL 3651350, at *12 (C.D. Cal. Aug. 19, 2011); and information regarding musical artists and their performances based on information available on non-party websites. *See Williams v. Midwest Airlines, Inc.*, 321 F. Supp. 2d 993, 994 n.2 (E.D. Wisc. 2004).

## ARGUMENT

I. **THE COPYRIGHT ACT'S THREE-YEAR STATUTE OF LIMITATIONS BARS PLAINTIFF'S CLAIM IN ITS ENTIRETY BECAUSE THE CLAIM MUST BE REGARDED AS A COPYRIGHT OWNERSHIP CLAIM THAT ACCRUED NO LATER THAN 2007**

Notwithstanding the fact that Plaintiff characterizes its claim as a copyright infringement claim, the dispute over its ownership rights in the *Day* copyright detailed on page 4 above confirms that copyright ownership is the gravamen of Plaintiff's claim. *See Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011) (when "ownership is not conceded[,] copyright ownership, and not infringement, is the gravamen of the plaintiff's claim to which the statute of limitations is applied") (quotations omitted); *Minder Music Ltd. v. Mellow Smoke Music Co.*, No. 98 Civ. 4496, 1999 WL 820575, at *2 (S.D.N.Y. Oct. 14, 1999) ("[T]he statute of limitations cannot be

8

defeated by portraying an action as one for infringement when copyright ownership rights are the true matter at issue."). Because of this, the statute of limitations applicable to copyright ownership claims governs this dispute. *See Kwan*, 634 F.3d at 229; *Minder Music*, 1999 WL 820575, at *2.

Unlike copyright infringement claims, the statute of limitations for copyright ownership claims does not apply on a "rolling basis", and, as such, bars all claims three years after they accrue. *Kwan*, 634 F.3d at 228. "An ownership claim accrues only once, when 'a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right.'" *Id.* (quoting *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992), *cert. denied*, 508 U.S. 906 (1993)). When there is "conspicuous activity" of the underlying claim, a reasonably diligent plaintiff is on notice of its rights, thereby triggering the accrual of its claim. *See U.S. Phillips Corp. v. ATI Techs., Inc.*, No. 05 Civ. 8176, 2008 WL 2073928, at *3 (S.D.N.Y. May 8, 2008). If a plaintiff does not file suit on its copyright ownership claim within three years of the claim's accrual, then the claim *must* be dismissed, along with "'any rights or remedies' that would flow from such a claim." *Margo v. Weiss*, 96 Civ. 3842, 1998 WL 2558, at *5 (S.D.N.Y. Jan. 5, 1998) (quoting *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996)), *aff'd*, 213 F.3d 55 (2d Cir. 2000); *see also Wilson v. Dynatone Publ'g Co.*, No. 16 Civ. 104, 2017 WL 1330336, at *5 (S.D.N.Y. Apr. 10, 2017) (same). Such rights and remedies include the right to sue for copyright infringement. *See Kwan*, 634 F.3d at 230 (if an "ownership claim is time-barred, and ownership is the dispositive issue, any attendant infringement claims must fail"). These principles are fatal to Plaintiff's copyright claim.

In short, the numerous public and unequivocal repudiations of McQuinton's purported ownership of the *Day* copyright in 2005, 2006 and 2007 described on page 4 above triggered the

accrual of a copyright ownership claim through which McQuinton could have obtained a judicial determination of the ownership of the work. *See Simmons v. Stanberry*, 810 F.3d 114, 115-16 (2d Cir. 2016) (plaintiff was on notice that the defendant had repudiated an alleged sale of exclusive rights to a musical "beat" to the plaintiff when defendant publicly released a recording employing the "beat," and was barred from filing suit more than three years after the recording's release); *Kwan*, 634 F.3d at 229 (plaintiff's copyright ownership claim was untimely because she did not file suit within three years of the initial publication of the book at issue without her listed as an author); *Aalmuhammed v. Lee*, 202 F.3d 1227, 1230-31 (9th Cir. 2000) (credits appearing with film's release that identified plaintiff as an "Islamic technical consultant," not an author, triggered his obligation to commence copyright ownership action within three years or lose the right to do so because they "plainly and expressly repudiated authorship"); *Wilson*, 2017 WL 1330336, at *6 (credits on record released and copyright registration listing entities other than plaintiffs as copyright claimants sufficient to put plaintiffs on notice of ownership claim); *Rico Records Distribs., Inc. v. Ithier*, 04 Civ. 9782 (JSR), 2005 WL 2174006, at *2 (S.D.N.Y. Sept. 8, 2005) (copyright notices on sound recordings at issue "create sufficient notice to begin the running of the statute of limitations"). Because McQuinton failed to seek such a determination by 2010, the statute of limitations forecloses Plaintiff from doing so in the context of this lawsuit. *See Simmons*, 810 F.3d at 116; *Kwan*, 634 F.3d at 229; *Margo*, 1998 WL 2558, at *5.

Plaintiff's self-serving allegation that McQuinton supposedly did not know *Day* sampled *Damn Girl* until 2015 is irrelevant – and cannot save this lawsuit from dismissal – because the multiple public repudiations of McQuinton's purported rights in *Day* in 2005, 2006, and 2007 and the popularity and pervasiveness of the Album incontrovertibly establish that "'a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right'" by 2007. *Kwan*,

634 F.3d at 228 (quoting *Stone*, 970 F.2d at 1048); *accord U.S. Phillips Corp.*, 2008 WL 2073928, at *3 ("conspicuous activity" of the underlying claim puts a reasonably diligent plaintiff on notice of its rights, thereby triggering the accrual of its claim). Thus, the statute of limitations on McQuinton's copyright ownership claim accrued no later than 2007 and, as such, expired in 2010, barring McQuinton and Plaintiff from pursuing thereafter any such claim or any rights and remedies flowing from it, including a claim for copyright infringement. *See Kwan*, 634 F.3d at 230; *Margo*, 1998 WL 2558, at *5 (quotation omitted); *Wilson*, 2017 WL 1330336, at *5; *see also Simmons*, 810 F.3d at 116 (plaintiff cannot "revive the time-barred claim of ownership of a copyright interest by relying on defendants' continued exploitation of the copyright within three years of [plaintiff] filing suit"). Accordingly, Plaintiff's claim is untimely, and must be dismissed in its entirety.

II. **EVEN IF PLAINTIFF'S CLAIM WERE VIEWED AS A COPYRIGHT INFRINGEMENT CLAIM (AND IT SHOULD NOT BE), IT NEVERTHELESS ACCRUED BY 2007, PREVENTING PLAINTIFF FROM OBTAINING RELIEF MORE THAN THREE YEARS PRIOR TO SUIT**

Even if the Court were to conclude Plaintiff's claim is for copyright infringement (and it should not), the timing of the claim's accrual would be no different than the copyright ownership claim. In sum, as discussed on pages 4 through 6 above, Plaintiff's own allegations and myriad facts in the public record of which the Court may take judicial notice demonstrate that, had McQuinton exercised a minimum of diligence, she would have discovered by 2007 the basis of the purported infringement claim at issue here, including as a result of (i) the ***express statements*** in the credits and copyright registrations for *Damn Girl* that the song samples *Day*; (ii) Plaintiff's allegations that "[a] substantial amount of the music in *Damn Girl* is copied from [*Day*]", and that the music in the two songs is "strikingly similar" (Cplt. ¶¶ 28, 31); (iii) the Album's tremendous popularity; (iv) the massive success of the Tour; (v) Plaintiff's assertion that

11

Timberlake performed *Damn Girl* "at all . . . concerts" during the Tour (*id.* ¶ 33); (vi) the success of the DVD; (vii) the HBO special featuring Timberlake's appearance at Madison Square Garden during the Tour, which special earned two Emmy nominations and one Emmy Award; (viii) the multiple Grammy Awards nominations and awards garnered by Album and songs featured on it in both 2006 and 2007; (ix) the Album's appearance in the Top 20 of Billboard's Top 200 albums of 2006; and (x) the four awards garnered by the Album at the 2007 MTV Video Music Awards, including Best Male Artist of the Year. *See Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014) (copyright infringement claims accrue upon either "actual or constructive discovery of the relevant infringement"); *see also William A. Graham Co. v. Haughey*, 568 F.3d 425, 433 (3d Cir. 2009) ("Under the discovery rule, a cause of action accrues when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim.") (internal quotations & citations omitted) (*cited with approval in Psihoyos*, 748 F.3d at 125-26); *U.S. Phillips Corp.*, 2008 WL 2073928, at *3 ("conspicuous activity" of the underlying claim puts a reasonably diligent plaintiff on notice of its rights, thereby triggering the accrual of its claim). The indications of Defendants' alleged infringement that existed by 2007, therefore, were readily discernible and extensive, foreclosing any plausible argument that McQuinton should not have known of the supposed wrongdoing and her injury as of that time. Accordingly, the purported copyright infringement claim at issue in this lawsuit accrued in 2007. *Psihoyos*, 748 F.3d at 125; *William A. Graham Co.*, 568 F.3d at 433; *U.S. Phillips Corp.*, 2008 WL 2073928, at *3.

      The accrual of Plaintiff's purported copyright infringement claim in 2007 bars Plaintiff from recovering damages for any time period more than three years before suit.[5] *See SCA*

---

[5] If the Court agrees with Defendants' position in Part I above that (i) Plaintiff's claim is properly seen as a copyright ownership claim and (ii) the claim accrued in 2007, then the claim would be time-barred in its entirety,

*Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 961-62 (2017) ("*SCA*") (the Copyright Act's statute of limitations "allows plaintiffs to gain retrospective relief *running only three years back from the date complaint was filed*", and functions "as a three-year look back limitations period") (internal quotations and citation omitted); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1968-79 (2014) (same); *Merchant*, 92 F.3d at 57 n.8 ("a copyright owner's suit for infringement is timely if instituted within three years of each infringing act for which relief is sought, but recovery is barred for any infringing acts occurring more than three years prior to suit") (citation omitted); *Kregos v. Associated Press*, 3 F.3d 656, 662 (2d Cir. 1993) (same); *Stone*, 970 F.2d at 1049-50 (same); *Mount v. Book-of-the-Month Club, Inc.*, 555 F.2d 1108, 1111 (2d Cir. 1977) (same). Plaintiff effectively admitted as much in its opposition to Defendants' first motion to dismiss. *See* Dkt. 63 at 14 (acknowledging that the *Petrella* plaintiff long ago knew about her copyright infringement action long but delayed filing suit, and that her "knowledge and her inaction for approximately 18 years acted as a waiver for claims accruing more than three years before she filed suit"). Thus, under no circumstances can Plaintiff recover damages prior to 2013. Accordingly, its claim for all earlier time periods must be dismissed.

### III. ASSUMING ARGUENDO THAT PLAINTIFF'S CLAIM DID NOT ACCRUE UNTIL 2015, PLAINTIFF STILL WOULD NOT BE ENTITLED TO ANY RELIEF MORE THAN THREE YEARS PRIOR TO SUIT

Even assuming Plaintiff's claim did not accrue until 2015, Plaintiff still would not be entitled to any relief prior to February 17, 2013 for the reasons set forth in Defendants' prior motion to dismiss (Dkt. 61), which is incorporated herein by reference. In sum, *SCA*, *Petrella* and decades of Second Circuit law foreclose Plaintiff from seeking or obtaining relief more than

---

preventing Plaintiff from obtaining *any* recovery. *See Kwan*, 634 F.3d at 228 (unlike copyright infringement claims, the statute of limitations for copyright ownership claims does not apply on a "rolling basis", and, as such, bars all claims three years after they accrue").

three years before it filed suit.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court dismiss with prejudice Plaintiff's copyright claim in its entirety or, in the alternative, for all periods prior to February 17, 2013 pursuant to Rule 12(b)(6).

Dated: New York, New York
July 20, 2017

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: /s/ Robert A. Jacobs
Robert A. Jacobs
Prana A. Topper
7 Times Square
New York, NY 10036
Telephone: (212) 790-4500
Facsimile: (212) 790-4545
E-Mail: rjacobs@manatt.com
E-Mail: ptopper@manatt.com

*Attorneys for William Adams p/k/a will.i.am d/b/a will.i.am Music Publishing, i.am.composing, llc, will.i.am music, inc. and BMG Rights Management (US) LLC d/b/a BMG Sapphire Songs*

| | |
|---|---|
| DAVIS WRIGHT TREMAINE LLP | COWAN, LIEBOWITZ & LATMAN P.C. |
| Marcia B. Paul<br>Joanna Summerscales<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Telephone:  (212) 603-6427<br>Facsimile:  (212) 489-8340<br>E-mail:  marciapaul@dwt.com<br>E-mail:  joannasummerscales@dwt.com | Richard S. Mandel<br>Joelle A. Milov<br>114 West 47th Street<br>New York, NY 10036<br>Telephone:  (212) 790-9200<br>Facsimile:  (212) 575-0671<br>E-mail:  rsm@cll.com<br>E-mail:  jam@cll.com |
| *Attorneys for Tennman Productions, LLC, Tennman Tunes, LLC, Justin Timberlake, Sony Music Entertainment and Zomba Recording LLC* | *Attorneys for Universal Music-Z Tunes LLC* |

15