UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
--------------------------------------------------------X
                                                        :
PK MUSIC PERFORMANCE, INC.,                             :
                                                        :
                              Plaintiff,                :
                                                        :
             - against -                                :
                                                        :
                                                        :
JUSTIN TIMBERLAKE, et al.,                              :
                                                        :
                              Defendants                :
                                                        :
--------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___9/30/2018___

16-CV-1215 (VSB)

**<u>OPINION & ORDER</u>**

<u>Appearances</u>:

Brian S. Levenson
Matthew F. Schwartz
Schwartz & Ponterio
New York, New York

Steven M. Lester
La Reddola, Lester & Associates
Garden City, New York
*Counsel for Plaintiff*

Marcia B. Paul
Davis Wright Tremaine LLP
New York, New York
*Counsel for Defendants Justin Timberlake, Zomba Recording LLC, Sony Music Entertainment,
Tennman Tunes, LLC, and Tennman Productions, LLC*

Prana A. Topper
Robert A. Jacobs
Manatt, Phelps & Phillips, LLP
New York, New York
*Counsel for Defendants William Adams p/k/a will.i.am d/b/a will.i.am Music Publishing,
i.am.composing, llc, will.i.am music, inc., and BMG Rights Management (US) LLC d/b/a BMG
Sapphire Songs*

Richard S. Mandel
Joelle A. Milov
Cowan, Liebowitz & Latman, P.C.
New York, New York

Bridget A. Crawford
Jones Day
New York, New York
*Counsel for Defendant Universal Music-Z Tunes LLC*

<u>VERNON S. BRODERICK</u>, United States District Judge:

Plaintiff PK Music Performance, Inc. ("PK Music" or "Plaintiff") brings this action against Defendants Justin Timberlake, William Adams, Zomba Recording LLC, Arista US Holdings, Inc., Sony Music Entertainment, Tennman Tunes, LLC, Universal Music-Z Tunes LLC, I.Am.Composing, LLC, BMG Rights Management (US) LLC, Will I Am Music, Inc., and Tennman Productions, LLC (collectively, "Defendants") asserting claims under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, for copyright infringement. Defendants[1] move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Plaintiff's copyright infringement claim cannot be dismissed as untimely at this stage in the litigation, Defendants' motion is DENIED.

## I.    **Background**[2]

This action centers on a musical composition entitled *A New Day Is Here At Last* ("*Day*"), which was written by Perry Kibble ("Kibble") and contains copyrightable subject matter under the U.S. copyright laws. (Compl. ¶¶ 18–19.)[3] Kibble registered the copyright in *Day* with the U.S. Copyright Office with an effective date of August 1, 1969. (*Id.* ¶ 20, Ex. 1.)

---

[1] Defendants William Adams, I.Am.Composing, LLC, Will I Am Music, Inc., and BMG Rights Management (US) LLC filed their motion to dismiss on behalf of themselves and the other named defendants. (Defs.' Mem. 1.) "Defs.' Mem." refers to the Memorandum of Law of Defendants William Adams, I.Am.Composing, LLC, Will.IAm Music, Inc., and BMG Rights Management (US) LLC in Support of Second Motion to Dismiss, filed on July 20, 2017. (Doc. 94.)

[2] The following factual summary is drawn from the allegations of the Complaint and exhibits attached or incorporated by reference thereto, (Doc. 4), unless otherwise indicated, which I assume to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[3] "Compl." refers to the Complaint, filed on February 18, 2016. (Doc. 4.)

J.C. Davis ("Davis"), a musician and colleague of Kibble, recorded and released *Day* in 1969 as a 45 rpm vinyl record on the New Day record label.  (*Id.* ¶ 21.)  The label on Davis's record credits Kibble as the writer of *Day*.  (*Id.* ¶ 22; Levenson Decl. Ex. A.)[4]

Kibble passed away in 1999, and by operation of will, assigned the ownership of the *Day* copyright to his sister, Janis McQuinton ("McQuinton").  (Compl. ¶ 23; Levenson Decl. Exs. C, D.)  McQuinton recorded the assignment with the U.S. Copyright Office on or about February 6, 2003.  (Compl. ¶ 24; Levenson Decl. Ex. D.)  In 2005, Davis released a remix of his 1969 recording of *Day* (the "*Day* Remix") under the Cali-Tex record label.  (Jacobs Decl. Ex. 4.)[5] The vinyl record states that "[a]ll music and lyrics" for the *Day* Remix are copyrighted to Davis, and does not mention Kibble or McQuinton.  McQuinton, having no knowledge of the release of the *Day* Remix, subsequently assigned 100% of her ownership interests in *Day*, including all accrued copyright infringement claims, to Plaintiff PK Music on December 2, 2015.  (Compl. ¶ 25.)  McQuinton is a principal of PK Music.  (*Id.*)  PK Music published *Day* on December 26, 2015 and registered the renewal copyright for *Day* with the U.S. Copyright Office with an effective date of January 11, 2016.  (*Id.* ¶¶ 26–27, Ex. 2.)

On or about September 12, 2006, Defendants commercially released the musical composition and sound recording entitled *Damn Girl* by Defendant Justin Timberlake ("Timberlake") on his album entitled *Futuresex/Lovesounds* (the "Album").  (*Id.* ¶ 28.)  Plaintiff alleges that a substantial amount of the music in *Damn Girl* is copied from *Day*, is not a product of independent creation, and is strikingly similar to *Day*.  (*Id.* ¶¶ 29–31.)  The Album booklet contains a page for *Damn Girl* that states that the song "contains a sample from [*Day*]," lists

---

[4] "Levenson Decl." refers to the Declaration of Brian Levenson, filed on August 11, 2017.  (Doc. 96.)

[5] "Jacobs Decl." refers to the Declaration of Robert A. Jacobs in Support of Memorandum of Law of Defendants in Support of Second Motion to Dismiss, filed on July 20, 2017.  (Doc. 95.)

Davis as a writer and publisher of the song, and states that the sample was "used courtesy of J.C. Davis under license to Cali-Tex Records." (Jacobs Decl. Ex. 2.) Two copyrights were registered for *Damn Girl* on September 24, 2006, (*id.* Ex. 5), and December 18, 2006, (*id.* Ex. 6). The September 24, 2006 registration states in the "Notes" section that *Damn Girl* "[s]amples A new day is here at last." (*Id.* Ex. 5.) It also lists "A new day is here at last" in the "Other Title" section. (*Id.*) A search for "New Day Is Here At Last" on the U.S. Copyright Office's website produces results that include the September 24, 2006 registration for *Damn Girl*. (*Id.* Ex. 14.) The December 18, 2006 registration lists Davis as a copyright claimant and lists Davis's name under "Names." (*Id.* Ex. 6.)

During his tour for the Album (the "Tour"), Timberlake allegedly performed *Damn Girl* at all concerts on the Tour. (*Id.* ¶ 33.) One of the concerts, at Madison Square Garden in New York City, was recorded, reproduced, and distributed by Defendants on a DVD entitled *Futuresex/Lovesounds: Live from Madison Square Garden* (the "DVD"). (*Id.* ¶ 34; *see also* Jacobs Decl. Ex. 4.) The wrap for the DVD lists Davis as a songwriter, but does not include any reference to *Day*. (Jacobs Decl. Ex. 3.) The Madison Square Garden concert was also the subject of an HBO special (the "HBO Special"), which aired on September 3, 2007. (*Id.* Ex. 11.) Neither Plaintiff nor McQuinton ever authorized Defendants to copy, reproduce, distribute, or publicly perform the copyrightable elements of *Day*. (Compl. ¶¶ 35, 40–41.)

The Album, Tour, DVD, and HBO Special were highly successful. The Recording Industry Association of America ("RIAA") certified the Album as four-times platinum (*i.e.*, selling over four million units) and the DVD as five-times platinum (*i.e.*, selling over 500,000 units) in March 2008. (Jacobs Decl. Ex. 7.) The Tour was one of the highest grossing tours of 2007, earning over $100 million in revenue and attracting over 1.6 million concertgoers. (*Id.* Ex.

11.)  In 2006, the Album, and certain songs featured on it (but not *Damn Girl*) earned four Grammy nominations—including for Album of the Year and Best Vocal Album—and won two Grammy awards.  (*Id.* Ex. 8.)  In 2007, certain songs featured on the Album (but not *Damn Girl*) earned three additional Grammy nominations and won two Grammy awards.  (*Id.*)  The HBO Special was nominated for two Emmy awards in 2008, and it won one.  (*Id.* Ex. 13.)  In addition, Justin Timberlake won four awards at the 2007 MTV Video Music Awards.  (*Id.* Ex. 10.)  The Album hit number nineteen on Billboard Magazine's Top 200 Albums for 2006.  (*Id.* Ex. 9.)

Plaintiff alleges that McQuinton "first discovered that the music in *Damn Girl* was copied from [*Day*] in August, 2015," nearly ten years after *Damn Girl* was first released. (Compl. ¶ 37.)

### II.     Procedural History

Plaintiff filed the Complaint in this action on February 18, 2016.  (Doc. 4.)  On July 18, 2016, Defendants filed their first motion to dismiss, contending that Plaintiff's copyright infringement claim should be dismissed as untimely for all time periods prior to February 17, 2013.  (Doc. 60.)  On the same date, Defendants filed a memorandum of law in support of their first motion to dismiss.  (Defs.' First MTD Mem.)[6]  Plaintiff filed its opposition to Defendants' first motion to dismiss, (Doc. 63), as well as a declaration in support of its opposition, (Doc. 62), on August 17, 2016.  Defendants filed their reply and a supporting declaration on September 9, 2016.  (Docs. 68–69.)  Plaintiff requested the opportunity to file a sur-reply on September 12, 2016, (Doc. 71), which Defendants opposed on September 13, 2016, (Doc. 72.)  On September 15, 2016, I denied Plaintiff's request and stated that I would disregard any new arguments raised

---

[6] "Def.'s First MTD Mem." refers to the Memorandum of Law of Defendants in Support of Motion to Dismiss, filed on July 18, 2016.  (Doc. 61.)

in Defendants' reply brief.  (Doc. 73.)

After several letters from the parties providing supplemental authority for their positions, (*see* Docs. 78–86), I issued a Memorandum & Opinion on June 13, 2017 denying Defendants' first motion to dismiss with leave to refile and instructed the parties to brief the question of whether the "discovery rule" for determining when a claim accrues bars Plaintiff's claims, (Doc. 87).  Defendants filed their second motion to dismiss on July 20, 2017, (Doc. 93), along with a memorandum of law in support, (Doc. 94), and a supporting declaration with exhibits, (Doc. 95).  On August 11, 2017, Plaintiff filed an opposition brief, (Doc. 100), as well as four declarations in support of its opposition and exhibits attached thereto, (Docs. 96–99).  Defendants filed their reply brief on August 28, 2017.  (Doc. 101.)  Plaintiff requested leave to file a sur-reply on August 30, 2017, (Doc. 104), which Defendants opposed on August 31, 2017, (Doc. 105), and which I denied on September 6, 2017, (Doc. 106).

Defendants filed a letter on September 29, 2017 providing supplemental authority for their position with respect to the three-year lookback for damages, (Doc. 107), to which Plaintiff responded on October 3, 2017, (Doc. 108).  Plaintiff filed its own letter providing supplemental authority on December 20, 2017, (Doc. 109), to which Defendants responded on December 22, 2017, (Doc. 110).  Finally, Plaintiff filed a letter on June 20, 2018 providing supplemental authority with respect to the accrual of an ownership claim, (Doc. 111), to which Defendant responded on June 26, 2018, (Doc. 112).

### III.   Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237.  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Id.*

## IV.   Discussion

Defendants argue that Plaintiff's claims should be dismissed because:  (1) Plaintiff's copyright infringement claim is truly a copyright ownership claim, which accrued more than three years before Plaintiff filed the instant action; (2) even if I were to construe Plaintiff's claim as one for copyright infringement, Plaintiff knew or should have known of the alleged infringement at least by 2007 pursuant to the "discovery rule," entitling Plaintiff to damages only for alleged infringements that occurred within the three years prior to commencement of this action; and (3) even if I were to find that Plaintiff's claim accrued at some point after 2007, Plaintiff is only entitled to damages for alleged infringements occurring within the three years

prior to commencement of this action.  I first address which of the numerous documents submitted outside of the Complaint can be appropriately considered in deciding Plaintiff's motion.  I then address Defendants' arguments in turn.

> **A.**     ***Documents Not Attached to, Incorporated by Reference, or Relied Upon in the Complaint***

> **1.  Applicable Law**

A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint."  *Id.* at 153 (internal quotation marks omitted).  "[M]ere notice or possession" of the documents is not enough; rather, "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion."  *Id.* (internal quotation marks and emphasis omitted).

In addition, courts may consider matters subject to judicial notice in deciding a Rule 12(b)(6) motion to dismiss.  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008) (noting that "matters judicially noticed . . . are not considered matters outside the pleadings").  Federal Rule of Evidence 201 provides that a "court may judicially notice a fact that is not subject to reasonable dispute because it:  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."  Fed. R. Evid. 201(b).  The Second Circuit has held that "it is proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents," in

assessing whether a party was on notice of a particular issue.  *Staehr*, 547 F.3d at 425 (citing cases); *see also Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) (holding that court may take judicial notice of federal copyright registrations); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) ("Courts routinely take judicial notice of . . . governmental records [retrieved from official government websites].").  "Courts may also take judicial notice of information contained on websites where the authenticity of the site has not been questioned."  *Fernandez v. Zoni Language Ctrs., Inc.*, No. 15-cv-6066 (PKC), 2016 WL 2903274, at *3 (S.D.N.Y. May 18, 2016) (internal quotation marks omitted), *aff'd*, 858 F.3d 45 (2d Cir. 2017).

On a motion to dismiss, a court "should generally take judicial notice to determine what statements the documents contain[,] not for the truth of the matters asserted."  *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 265 (S.D.N.Y. 2013) (internal quotation marks omitted), *aff'd*, 807 F.3d 541 (2d Cir. 2015), and *aff'd*, 622 F. App'x 67 (2d Cir. 2015).

### 2.  Application

The parties collectively submitted over forty documents—in the form of attachments to the Complaint, declarations in support of or in opposition to Defendants' motion to dismiss, and exhibits to those declarations—for my consideration.[7]  (*See generally* Compl.; Jacobs Decl.; Levenson Decl.; McQuinton Decl.; Phinney Decl.; Hull Decl.)[8]  As an initial matter, I may consider the exhibits attached to the Complaint as part of the pleadings.  *See Chambers*, 282 F.3d at 152.  I also find that the following documents were incorporated by reference into the

---

[7] The fact that I may consider a given document because it was part of the pleadings or because I take judicial notice of it does not necessarily mean that I find it to be relevant to the issues I decide in this Opinion & Order.

[8] "McQuinton Decl." refers to the Declaration of Janis McQuinton, filed on August 11, 2017.  (Doc. 97.)  "Hull Decl." refers to the Declaration of John W. Hull, filed on August 11, 2017.  (Doc. 98.)  "Phinney Decl." refers to the Declaration of Thomas W. Phinney, filed on August 11, 2017.  (Doc. 99.)

Complaint:  Exhibits 2 and 3 to the Jacobs Declaration, (*see* Compl. ¶¶ 28, 34), and Exhibits A,

C, and D to the Levenson Declaration, (*see id.* ¶¶ 21–24).

I take judicial notice of the following documents because they are governmental records

from the United States Copyright Office, several of which were retrieved from governmental

websites, *see Wells Fargo Bank*, 127 F. Supp. 3d at 166:  Exhibits 1, 5, 6, and 14 to the Jacobs

Declaration, and Exhibits J, K, L, M, N, O, P to the Levenson Declaration.  I also take judicial

notice of the following documents because they are screenshots of websites, the authenticity of

which neither party has questioned, and/or because they constitute press coverage, *see Staehr*,

547 F.3d at 425; *Fernandez*, 2016 WL 2903274, at \*3:  Exhibits 7, 8, 9, 10, 11, 12, and 13 to the

Jacobs Declaration, and Exhibits E, Q, S, and T to the Levenson Declaration.  Furthermore, I

take judicial notice of the book excerpt attached as Exhibit R to the Levenson Declaration, as

well as the record labels attached as Exhibit 4 to the Jacobs Declaration and as Exhibits G, H,

and I to the Levenson Declaration, as there is no dispute as to their authenticity.

I decline, however, to take judicial notice of the McQuinton, Hull, and Phinney

Declarations, (Docs. 97–99), as they provide testimony that is outside the Complaint, and

Plaintiff has provided no basis for me to consider them without converting Defendants' motion

into one for summary judgment.  *See Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir.

2000) (stating that it is inappropriate for a district court to consider affidavits not attached to the

Complaint on a Rule 12(b)(6) motion to dismiss).[9]  Similarly, I also decline to take judicial

notice of Davis's deposition testimony, (Levenson Decl. Ex. F), as it is not part of the pleadings,

nor is it a matter of public record.

---

[9] Plaintiff has also failed to provide a basis for me to consider Exhibit B to the Levenson Declaration, which is the curriculum vitae of Thomas W. Phinney.

### B.    *Copyright Ownership*

Although Plaintiff alleges a claim for copyright infringement, (Compl. ¶¶ 42–46), Defendants contend that its claim should be construed as a copyright ownership claim due to purported repudiations of Plaintiff's ownership by Davis in the mid-2000s, (Defs.' Mem. 8–11). Plaintiff argues that Defendants' attempt to transform its infringement claim into an ownership claim fails because the purported challenge to Plaintiff's ownership rights is itself time-barred. (Pl.'s Opp. 12–17.)[10]

### 1.  Applicable Law

When copyright ownership "is the gravamen of the plaintiff's claim," a copyright infringement claim should be construed as a copyright ownership claim for purposes of applying the statute of limitations.  *See Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011).  "[T]he statute of limitations cannot be defeated by portraying an action as one for infringement when copyright ownership rights are the true matter at issue."  *Minder Music Ltd. v. Mellow Smoke Music Co.*, No. 98 Civ. 4496(AGS), 1999 WL 820575, at *2 (S.D.N.Y. Oct. 14, 1999).  "Where . . . a plaintiff's copyright ownership is not conceded . . ., copyright ownership, and not infringement, is the gravamen of the plaintiff's claim to which the statute of limitations is applied."  *Ortiz v. Guitian Bros. Music Inc.*, No. 07 Civ. 3897, 2008 WL 4449314, at *3 (S.D.N.Y. Sept. 29, 2008). However, a defendant may not convert an infringement claim into an ownership claim "by asserting unsupported defects in ownership."  *Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, 80 F. Supp. 3d 535, 543 (S.D.N.Y. 2015).

The statute of limitations for claims brought under the Copyright Act is three years from

---

[10] "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Second Motion to Dismiss, filed August 11, 2017.  (Doc. 100.)

the date on which the claim accrued.  17 U.S.C. § 507(b).  A claim for copyright ownership

accrues "when a plaintiff knows or has reason to know of the injury upon which the claim is

premised."  *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996).  While "any number of events can

trigger the accrual of an ownership claim, including an express assertion of sole authorship or

ownership," the Second Circuit has held that "[a]n ownership claim accrues only once, when a

reasonably diligent plaintiff would have been put on inquiry as to the existence of a right."

*Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011) (internal quotation marks omitted).

### 2.  Application

Defendants argue that Plaintiff's claim is time-barred because Davis's "numerous public

and unequivocal repudiations of McQuinton's purported ownership of the *Day* copyright in

2005, 2006, and 2007" transform Plaintiff's infringement claim into an ownership claim, which

accrued at the time of the purported repudiations.  (Defs.' Mem. 9–10.)  I disagree.

As an initial matter, it makes little sense to construe Plaintiff's infringement claim against

Defendants as an ownership claim when none of the parties assert that Defendants have any

ownership rights in *Day*.  Defendants claim that "Davis had repudiated [McQuinton's] purported

ownership rights in *Day*," not Defendants.  (*Id.* at 4.)  If Plaintiff had an ownership claim, it

would be against Davis, not Defendants.  It defies logic to transform Plaintiff's infringement

claim against Defendants into an ownership claim as part of an action in which Davis is not a

party, neither party has moved to join him as a party, and he has not sought to intervene to

enforce his purported ownership rights.  As Chief Judge McMahon explained:

> In copyright ownership cases, the lawsuit is between two parties who claim
> ownership of the copyrights (often, as was the case in *Kwan,* with one party
> claiming joint ownership by virtue of collaboration with the party who registered
> the copyright), and one party's claim of infringement is entirely a function of
> whether the other party is the sole owner of the disputed copyrights.  Here,
> [plaintiff] is suing [defendant] for infringement, and [defendant] does not assert that

> *it* owns the common law copyright in the Turtles' master recordings.  It makes no sense to say that [plaintiff's] cause of action against [defendant] accrued when it became aware of its disputed ownership rights against [defendant], because [defendant] does not claim ownership of the copyrights and there is no ownership dispute between [plaintiff] and [defendant].

*Flo & Eddie*, 80 F. Supp. 3d at 542–43; *see also Complex Sys., Inc. v. ABN Ambro Bank N.V.*, 979 F. Supp. 2d 456, 475 (S.D.N.Y. 2013) ("The law is clear that a party accused of infringement cannot defeat that claim by pointing to rights that another may have to the work in question.").  Here, similarly, there is no ownership dispute between Plaintiff and Defendants, and thus I decline to construe Plaintiff's infringement claim against Defendants as an ownership claim for statute of limitations purposes.[11]

Even if a third party's theoretical challenge to a plaintiff's ownership rights in a copyright could transform a plaintiff's infringement claim into an ownership claim, I find no basis to do that here.  Based on the facts before me, Davis's ownership challenge against Plaintiff would almost certainly be time-barred.  Kibble wrote *Day* and registered the copyright for it with the United States Copyright Office with an effective date of August 1, 1969.  (Compl. ¶ 20.) Kibble's registration did not name Davis as an author or co-author of the copyright.  (*Id.* Ex. 1.) Davis was on notice of Kibble's ownership right when Davis himself released a recording of *Day* in 1969 on 45 rpm vinyl records that credited Kibble as the writer of *Day*.  (*Id.* ¶¶ 21–22; Levenson Decl. Ex. A.)  Davis was thus indisputably on notice of Kibble's assertion of ownership as of 1969, and any ownership claim he had with respect to *Day* accrued in 1969 and was time-barred as of no later than the end of 1972.[12]  Therefore, I find that Defendants have

---

[11] My findings here do not preclude Defendants from arguing at a later stage that Plaintiff cannot establish the elements of a copyright infringement claim, which include demonstrating ownership of the copyright.  In other words, I make no findings with regard to ownership of the copyright in this Opinion & Order.

[12] Defendants argue for the first time in a footnote of their Reply that Davis publicly repudiated Plaintiff's ownership rights in the renewal term copyright of *Day*, thus undermining Plaintiff's argument that Davis's

asserted no more than "unsupported defects in ownership," which is insufficient to convert

Plaintiff's infringement claim into an ownership claim for statute of limitations purposes. *Flo &*

*Eddie*, 80 F. Supp. 3d at 543; *see also ABN Ambro Bank*, 979 F. Supp. 2d at 476 (holding that

when a third party's ownership claim would be untimely, any defense based on the third-party's

ownership was "wholly ineffective"); *cf. Walker v. Carter*, 210 F. Supp. 3d 487, 507 (S.D.N.Y.

2016) (finding that defendants' presentation of "ample evidence" at summary judgment of third

parties' "colorable claims of ownership" was enough to convert infringement claim into

ownership claim for limitations purposes), *appeal docketed*

### C.  *Copyright Infringement*

#### 1.  **Applicable Law**

"Civil actions for copyright infringement must be 'commenced within three years after

the claim accrued.'"  *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014)

(quoting 17 U.S.C. § 507(b)).  In *Psihoyos*, the Second Circuit joined all other circuits that have

considered the issue by adopting the "discovery rule" to determine when an infringement claim

accrues:  "copyright infringement claims do not accrue until actual or constructive discovery of

the relevant infringement."[13]  *Id.*  Therefore, a copyright infringement claim accrues when a

---

ownership claim would be time-barred.  (Defs.' Reply 2–3 n.2.)  I need not consider this argument since it was raised for the first time in Defendants' reply.  *See Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); *United States v. Letscher*, 83 F. Supp. 2d 367, 377 (S.D.N.Y. 1999) ("[A]rguments raised in reply papers are not properly a basis for granting relief.").

[13] Although the *Psihoyos* court held that infringement claims accrue when there is "actual or constructive discovery of the relevant infringement," 748 F.3d at 124, the parties appear to agree that the standard announced in *Psihoyos* permits a finding of accrual when a party is on inquiry notice of its claim.  (*See* Pl.'s Opp. 18–19; Def.'s Reply 5.) Several courts similarly appear to conflate inquiry notice with the constructive discovery standard articulated in *Psihoyos*.  *See, e.g.*, *Sohm v. Scholastic Inc.*, No. 16-CV-7098 (JPO), 2018 WL 1605214, at *11 (S.D.N.Y. Mar. 29, 2018) ("In order to raise a genuine factual dispute over the date on which the claims accrued, [defendant] must identify some affirmative evidence that would have been sufficient to awaken inquiry and prompt an audit on [p]laintiffs' part." (internal quotation marks omitted)), *appeal docketed*, No. 18-2245 (2d Cir. Aug. 1, 2018); *Energy Intelligence Grp., Inc. v. Scotia Capital (USA) Inc.*, 16-cv-00617 (PKC)(KNF), 2017 WL 432805, at *2 (S.D.N.Y. Jan. 30, 2017) ("[T]he Court cannot conclude . . . that plaintiffs were on inquiry notice of the infringement.").  It is not clear, however, whether the "actual or constructive discovery" standard in *Psihoyos* encompasses inquiry notice.

plaintiff discovers, or with due diligence should have discovered, the relevant infringement. *Id.* The standard for whether a plaintiff should have discovered the relevant infringement is an objective one. *See Staehr*, 547 F.3d at 427.

A court may dismiss a copyright infringement claim on statute of limitations grounds at the pleadings stage where "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015) (internal quotation marks omitted). However, where there is even "some doubt" as to whether dismissal is warranted, a court should not grant a Rule 12(b)(6) motion on statute of limitations grounds. *See Ortiz v. Cornetta*, 867 F.2d 146, 149 (2d Cir. 1989).

### 2. Application

#### a. Accrual

Plaintiff alleges that its principal, McQuinton, first discovered the alleged infringements in August 2015. (Compl. ¶ 37.) Defendants argue that even if Plaintiff first gained actual knowledge of the alleged infringements in 2015, the facts underlying Plaintiff's claims "were readily available to McQuinton, and . . . she had the means to discover them, no later than 2007." (Defs.' Reply 7.)[14] Defendants rely on the popularity and success of the Album, DVD, Tour, and HBO Special, and various nominations and awards garnered by the Album, DVD, and HBO

---

*See Ranieri v. Adirondack Dev. Grp., LLC*, 164 F. Supp. 3d 305, 343 (N.D.N.Y. 2016) ("'[I]nquiry notice' is not the same as actual or constructive discovery." (quoting *Chicago Bldg. Design*, *P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 615 (7th Cir. 2014))). As the Supreme Court has explained, inquiry notice—"the point at which a plaintiff possesses a quantum of information sufficiently suggestive of wrongdoing that he should conduct further inquiry"— is not equivalent to "discovery." *Merck & Co. v. Reynolds*, 559 U.S. 633, 650–51 (2010). Nevertheless, this lack of clarity does not impact my decision because I find that at this stage of the proceedings Defendants have failed to show that Plaintiff was on either inquiry or constructive notice of its claims before it actually discovered them.

[14] "Defs.' Reply" refers to the Reply Memorandum of Law of Defendants in Support of Second Motion to Dismiss, filed on August 28, 2017. (Doc. 101.)

Special to argue that, with due diligence, McQuinton should have known of the alleged infringement by 2007 at the latest.  (Defs.' Mem. 11–12.)  Defendants' argument misses the mark.

As an initial matter, Plaintiff contends that McQuinton never heard *Damn Girl* before August 2015, never purchased or possessed a copy of the Album or DVD, and never attended a Timberlake concert or saw one on television or DVD.  (Pl.'s Opp. 20.)  I accept these facts as true for purposes of deciding Defendants' motion as they are reasonable inferences from the allegation in the Complaint that McQuinton "first discovered that the music in *Damn Girl* was copied from [*Day*] in August, 2015."  (Compl. ¶ 37.)

Defendants' argument that the popularity and success of the Album, DVD, Tour, and HBO Special gave rise to constructive or inquiry notice of Plaintiff's claims is unpersuasive. Nothing in the record before me suggests that *Damn Girl* was ever played on the radio, and even if it was, that Plaintiff had the opportunity to hear it.  The only way Plaintiff would have heard *Damn Girl* would have been by buying the Album or DVD (or obtaining/hearing the song in some other way), owning an HBO subscription (or watching HBO or the performance of the song on HBO in some other way), or attending a concert on the Tour.  Defendants have supplied no case law that suggests that a diligent plaintiff is one who obtains all popular or successful albums or concert DVDs at any given time and scours each song and the liner notes to discover potential infringements.  Nor is the diligent plaintiff one who has or obtains access to HBO and watches all concert specials available on the channel or who attends the concerts of all popular artists.  The fact that the Album, DVD, and HBO Special were nominated for and won several prominent awards also fails to support Defendants' argument.  Nothing in the record suggests that *Damn Girl* itself received any awards.  And Defendants have provided no authority

supporting the position that a diligent plaintiff is one who watches or keeps track of major awards shows every year and listens to each song on each album or television special that was nominated for or won an award.  Simply because a person could have bought the Album or DVD, attended a concert on the Tour, or watched the HBO Special does not mean that a reasonable person exercising due diligence in McQuinton's position should have done any of those things.

Defendants also point to two copyright registrations for *Damn Girl*, dated September 24, 2006 and December 18, 2006, (Jacobs Decl. Exs. 5, 6), to contend that McQuinton should have known of the alleged infringements.  The December 18, 2006 registration only lists Davis as a claimant to the copyright in *Damn Girl*.  (*Id.* Ex. 6.)  It makes no mention of *Day*, and therefore, is insufficient on its face to serve as any form of notice of infringing activity with respect to *Day*.

The September 24, 2006 registration states in the "Notes" section that it "Samples A new day is here at last" and lists "A new day is here at last" in the "Other Title" section.  (*Id.* Ex. 5.) While it is true that "[r]ecordation of a document in the Copyright Office gives all persons constructive notice of the facts stated in the recorded document," 17 U.S.C. § 205(c), copyright registration, on its own, is "not an effective repudiation" sufficient to provide "reasonable notice" to a copyright ownership claimant.  *Wilson v. Dynatone Publ'g Co.*, 892 F.3d 112, 119 (2d Cir. 2018).  Moreover, copyright owners do not have a general duty to police their copyrights.  *See, e.g.*, *id.* ("An author is not under a duty to constantly monitor filings in the Copyright Office on pain of losing her copyright."); *Ranieri*, 164 F. Supp. 3d at 345 (holding that copyright owner has no duty to police public records or activities); *H. M. Kolbe Co. v. Armgus Textile Co.*, 315 F.2d 70, 74 (2d Cir. 1963) (holding that copyright owner has no affirmative duty to police subsequent distributions of his own product); *cf. Warren Freedenfeld Assocs., Inc. v.*

*McTigue*, 531 F.3d 38, 46 (1st Cir. 2008) ("Architects have no general, free-standing duty to comb through public records or to visit project sites in order to police their copyrights."); *Design Basics, LLC v. Chelsea Lumber Co.*, 977 F. Supp. 2d 714, 725 (E.D. Mich. 2013) ("The Court . . . rejects [d]efendants' argument that [p]laintiff was under a continuous duty to police its copyright . . . .").[15]  Therefore, I decline to find that McQuinton was on inquiry or constructive notice of her claims when Defendants registered the copyrights for *Damn Girl*.

For the reasons stated above, based upon the allegations in the Complaint and the documents I have indicated are appropriate to consider in deciding this motion, McQuinton was not on notice of her claims as of 2007.  However, this is not a factual finding, and I make no factual findings as to when McQuinton or Plaintiff were on notice of their claims.  Therefore, this Opinion & Order does not preclude Defendants from raising the issue of notice at a later date.

### b.  Three-Year Lookback

Defendants contend that even if Plaintiff's claim did not accrue until 2015, Plaintiff is not entitled to damages for any alleged infringements that occurred more than three years prior to the commencement of this action under the statute of limitations on civil copyright actions pursuant to 17 U.S.C. § 507(b).  (Defs.' Mem. 13–14.)  Plaintiff argues that limiting recovery to damages suffered from infringements only within the three years prior to bringing a claim would simply be an end-run around the discovery rule and would impose "the injury rule in disguise."  (Doc. 108.)  This issue was the subject of Defendants' first motion to dismiss.

---

[15] Although Defendants attempt to distinguish these and other cases Plaintiff cites in support of the argument that copyright owners do not have a general duty to police their copyrights, Defendants do not cite any authority supporting the position that a copyright owner has a duty to search public records for infringing activity.  Rather than providing such authority, Defendants argue that "the conspicuous and pervasive nature of the alleged infringement required no policing to be discovered."  (Defs.' Reply 9.)  For the reasons discussed above, that argument is not persuasive.

There has been disagreement among courts on this issue, especially following the Supreme Court's decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014). *Petrella* dealt with the question of whether the equitable defense of laches could prevent a plaintiff from bringing a claim that was within the three-year statute of limitations for copyright claims. *Id.* In answering no to that question, the Court described the nature of the statute of limitations under 17 U.S.C. § 507(b) for copyright infringement actions. The Court explained that "[a] claim ordinarily accrues when a plaintiff has a complete and present cause of action. In other words, the limitations period generally begins to run at the point when the plaintiff can file suit and obtain relief. A copyright claim thus arises or accrues when an infringing act occurs." *Petrella*, 134 S. Ct. at 1969 (internal quotation marks omitted). In a footnote, the Court clarified that "[a]lthough we have not passed on the question, nine Courts of Appeals have adopted, as an alternative to the incident of injury rule, a discovery rule, which starts the limitations period when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." *Id.* at n.4 (internal quotation marks omitted). Therefore, the Court described the injury rule, but noted that it was not passing on whether the injury rule or the discovery rule was the appropriate measure for when an infringement claim accrues.

In its explication of the statute of limitations, the Court at various points suggested that a plaintiff may only recover for infringements occurring within three years of initiating an action. For example, the Court stated that "§ 507(b)'s limitation period . . . allows plaintiffs . . . to gain retrospective relief running only three years back from the date the complaint was filed." *Id.* at 1970. Defendants seize on these references in *Petrella* to argue that Plaintiff is not entitled to recover for any alleged infringements occurring before February 17, 2013, which is three years prior to the filing of the Complaint. (*See* Defs.' First MTD Mem. 5–6.) However, the Court's

references to the three-year lookback for damages must be read in the context of its discussion of

the injury rule as the method to determine claim accrual.  The Court described that a copyright

claim "arises or accrues when an infringing act occurs," and that "each infringing act starts a new

limitations period."  *Petrella*, 134 S. Ct. at 1969 (internal quotation marks omitted).  In

referencing the three-year lookback for damages, *Petrella* simply recognized that under the

injury rule, a party may recover damages for, at most, the three years prior to bringing a claim

because a claim accrues upon the relevant infringement and must be brought within three years

therefrom.  *See id.* ("Under the Act's three-year provision, an infringement is actionable within

three years, and only three years, of its occurrence.  And the infringer is insulated from liability

for earlier infringements of the same work.").  In other words, a three-year lookback for damages

is a necessary consequence of applying the injury rule.  However, the Court acknowledged that

"nine Courts of Appeals have adopted, as an alternative to the incident of injury rule, a

'discovery rule,'" and that it was not passing on the question of which rule should be applied.[16]

*Id.* at n.4.  Therefore, *Petrella* cannot be read to require a three-year limitation on damages when

applying the discovery rule.

Defendants argue against this reading of *Petrella* by pointing to the district court's

decision in *Papazian v. Sony Music Entm't*, No. 16-cv-07911 (RJS), 2017 WL 4339662,

(S.D.N.Y. Sept. 28, 2017).  In *Papazian*, the court simultaneously applied the discovery rule and

the three-year lookback to find that the plaintiff timely filed his infringement action but was not

---

[16] In one Court of Appeals case that explicitly discusses damages prior to *Petrella*, the Ninth Circuit—applying the discovery rule to determine the date of accrual for copyright infringement claims—stated that "the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances."  *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004), *as amended on denial of reh'g and reh'g en banc* (Oct. 25, 2004), *opinion amended on denial of reh'g*, No. 03-35188, 2004 WL 2376507 (9th Cir. Oct. 25, 2004).

entitled to damages because the relevant infringements occurred more than three years prior to

filing of the complaint.  *Id.* at \*4–6.  It held that *Psihoyos* requires application of the discovery

rule, *id.* at \*3–4, but that *Petrella* "explicitly adopted the rolling approach as the appropriate way

to determine the scope of relief," which it defined as requiring that "a plaintiff is entitled to

recover damages only for infringing acts actually occurring up to three years before filing the

complaint."[17]  *Id.* at \*4.  In other words, *Papazian* held that *Petrella*'s discussion of the injury

rule was non-binding dicta, but that *Petrella*'s discussion of the three-year lookback was binding.

This improperly separates *Petrella*'s discussion of the injury rule from its discussion of the three-

year lookback.  I find no basis in the language of the *Petrella* opinion to draw such a distinction,

and I thus decline to follow the approach of *Papazian*.

Moreover, as other courts have reasoned, it would be inconsistent with the discovery rule

to apply the three-year lookback.  Under the discovery rule, when infringements occur more than

three years prior to the filing of suit, claims for those infringements are still timely when the

plaintiff discovered or should have discovered the infringements within three years of bringing

suit.  Applying the three-year lookback to those claims would effectively impose the injury rule

because the plaintiff would be barred from recovery for infringements occurring more than three

years prior to suit.  Given the Second Circuit's explicit adoption of the discovery rule in

*Psihoyos*, and the Supreme Court's explicit decision not to overrule it in *Petrella*, I am bound by

---

[17] It appears, in distinguishing between the "rolling approach" and the "continuing wrong approach," the court in *Papazian* referenced *Petrella*'s distinction between the separate accrual rule and the continuing violation rule, *see Petrella*, 134 S. Ct. at 1969 & n.6.  However, those two rules specifically address when a claim accrues, not the scope of relief to which a plaintiff is entitled.  *See id.* at 1969 ("It is widely recognized that the separate-accrual rule attends the copyright statute of limitations.  Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation. . . . Each wrong gives rise to a discrete claim that accrues at the time the wrong occurs." (internal quotation marks omitted)), n.6 ("Separately accruing harm should not be confused with harm from past violations that are continuing.").

the precedent in this Circuit to apply the discovery rule and not to apply the three-year lookback.

Other courts have arrived at the same conclusion.  *See Energy Intelligence Grp.*, 2017 WL

432805, at *2 (holding that "the dicta from <u>Petrella</u> did not overrule <u>Psihoyos</u>" and declining to

apply a three-year lookback); *Sohm*, 2018 WL 1605214, at *11 (same); *accord Mitchell v.*

*Capitol Records, LLC*, 287 F. Supp. 3d 673, 678 (W.D. Ky. 2017) (holding that *Petrella* did not

overrule Sixth Circuit precedent requiring application of the discovery rule and declining to

apply a three-year lookback); *Panoramic Stock Images, Ltd v. McGraw-Hill Glob. Educ.*

*Holdings, LLC*, No. 12 C 9881, 2015 WL 393381, at *2 (N.D. Ill. Jan. 27, 2015) (holding that

*Petrella* did not abrogate Seventh Circuit precedent requiring application of discovery rule and

declining to apply a three-year lookback).

      Citing several cases, Defendants contend that Plaintiff's position "flies in the face of

more than four decades of Second Circuit law" that applies the three-year lookback.  (Defs.' First

MTD Mem. 6–8.)  As an initial matter, many of the cases Defendants cite either do not apply the

discovery rule to an infringement claim or do not specifically address the rule of accrual.  *See,*

*e.g.*, *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996) (applying discovery rule to ownership

claim); *Kregos v. Associated Press*, 3 F.3d 656, 662 (2d Cir. 1993) (failing to address rule of

accrual); *Sharp v. Patterson*, No. 03 Civ. 8772(GEL), 2004 WL 2480426, at *12 (S.D.N.Y. Nov.

3, 2004) (holding that discovery rule only applies to ownership claims and applying injury rule to

infringement claim).  In addition, prior to *Psihoyos*, the Second Circuit had never declared

whether or not the appropriate rule for accrual was the injury rule or the discovery rule.  *See*

*Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 357 (S.D.N.Y. 2014)

("Until recently, the Second Circuit had not determined the appropriate accrual rule for federal

copyright infringement claims. . . . On April 4, 2014, the Second Circuit put an end to the

uncertainty when it held, in *Psihoyos* . . . that the discovery rule applies to claims for federal copyright infringement.").  Given the lack of clear guidance from the Second Circuit on the appropriate rule of accrual for an infringement claim prior to *Psihoyos* and the lack of persuasive case law applying the discovery rule in conjunction with a three-year lookback, I do not find that there is "long-settled Second Circuit law," (Defs.' First MTD Mem. 6), supporting Defendants' argument.  Defendants' motion to dismiss Plaintiff's claims for infringements occurring before February 17, 2013 is therefore denied.

## V.   <u>Conclusion</u>

For the reasons stated herein, Defendants' motion to dismiss, (Doc. 93), is DENIED.  The Clerk of Court is respectfully directed to terminate the open motion at Doc. 93.  Defendants shall file their Answer to the Complaint within twenty-one (21) days of the issuance of this Opinion & Order.


SO ORDERED.

Dated: September 30, 2018
        New York, New York

Vernon S. Broderick
United States District Judge